IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MALIK JONES,

        Plaintiff,                    No. CIV S-08-0096 FCD EFB P

    vs.

T. FELKER, et al.,

        Defendants.              <u>ORDER AND</u>
                                              <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Currently outstanding are several motions filed by plaintiff seeking various forms of injunctive relief (Dckt. Nos. 5, 6, 10, 35, 44, 46, 64, 71, and 73[1]), plaintiff's motion for leave to file an amended complaint (Dckt. No. 45), and two motions to dismiss filed by defendants with accompanying requests for judicial notice. Dckt. Nos. 58, 62, and 72. For the following reasons, the court grants plaintiff's request for leave to file an amended complaint. Further, the court recommends denial of plaintiff's requests for injunctive relief. Finally, the court recommends that defendants' motions to dismiss certain of plaintiff's claims be granted in part and denied in part.

---

[1] Because the instant Order and Findings and Recommendations addresses numerous motions, the court will identify each by its Docket Number to avoid confusion.

1

## I. Plaintiff's Motion for Leave to File an Amended Complaint

On June 3, 2009, plaintiff filed a "1st Motion Requesting Leave to File an Amended Complaint," Dckt. No. 45, to "add new facts and reflect just the incidents involving the '6' (six) defendants and defendant T. Felker, whom the Court granted and ordered process of service on, in this case." Under the applicable rule, "[a] party may amend its pleading once as a matter of course before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1)(A). No defendant has filed a responsive pleading, and plaintiff's motion for leave to amend is accordingly granted.

## II. Plaintiff's Motions for Injunctive Relief

Plaintiff has filed numerous motions asking for various forms of injunctive relief. (Dckt. No. 5 (asking Court to order defendants to: (1) give plaintiff his property; (2) show why plaintiff is on "C" status; (3) allow plaintiff to go to canteen; (4) give plaintiff a package sent by his family; and (5) transfer plaintiff out of High Desert State Prison ("HDSP")), Dckt. No. 6 (same), Dckt. No. 10 (asking Court to "retain" plaintiff's legal property), Dckt. No. 35 (asking Court to order defendants not to "yard" plaintiff), Dckt. No. 44 (seeking transfer out of HDSP), Dckt. No. 64 (seeking appointment of counsel, return of property, and transfer out of HDSP), Dckt. No. 71 (seeking transfer out of HDSP and an order requiring defendants to respond to Docket No. 44), and Dckt. No. 73 (seeking order that plaintiff's wheelchair be returned to him and transfer out of HDSP).)

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 374 (2008); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 2009 U.S. App. LEXIS 23887, *44 (9th Cir. 2009). In Docket Numbers 5, 6, 10, 35, 64, 71, and 73, plaintiff alleges many transgressions against him on the part of sometimes identified and sometimes unidentified HDSP staff, but he has not attempted to make a

showing of likely success on the merits, favorable balance of equities, or public interest. Accordingly, the undersigned recommends denial of plaintiff's variously-styled motions for injunctive relief at Docket Numbers 5, 6, 10, 35, 64, 71, and 73.

In his renewed motion for a temporary restraining order (Docket No. 44; the first motion for a TRO was denied without prejudice pending resolution of some service issues), plaintiff alleges that he is "subjected to retaliation of 'all' forms from H.D.S.P. officials 'continually,' which causes plaintiff's life, safety and security to be in severe danger from both staff and inmate population here at H.D.S.P." He seeks a preliminary injunction ordering all defendants, "their successors in office, agents and employees and all other persons acting in concern [sic] and participation with them" to transfer plaintiff out of HDSP to a prison of his choice. In support of his motion, plaintiff submits his own declaration and affidavits from fellow inmates H. Scott and Stephone Brown.

Plaintiff declares that on December 8, 2007, he was extracted from his cell "out of retaliation and racism" by "HDSP officials" and placed in the yard where he is subjected to ongoing retaliation by HDSP officials who are trying to kill him. Plaintiff provides no specific facts about why he believes these acts are retaliatory or discriminatory or what conduct occurs on the yard that plaintiff believes is designed to kill him. Plaintiff further declares that prison staff are retaliating against him by not allowing his family and friends to visit him. Finally, according to plaintiff, on February 14, 2007, prison officials tried to kill him, threatened him to keep quiet about the assault, and then "assaulted plaintiff sexually and physically by way of illegal strip search." Plaintiff again provides no details about how prison officials attempted to kill him.

In an affidavit, H. Scott states that, on November 29, 2007, he heard defendants Betti and Brautingham harassing plaintiff about an administrative appeal he had filed to obtain his legal documents. According to Mr. Scott, Betti and Brautingham told plaintiff "he wasn't getting shit and fuck his legal property." Then Brautingham said, "We came in their [sic] once and fucked

you up Jones we'll do it again." Betti said, "You better hope I don't catch any of your family in parking lot or garage," and then one of the two defendants said, "I'm not reading shit to you dum [sic] ass." Stephone Brown's affidavit provides the same account, clarifying that one of the defendants pushed plaintiff's administrative appeal under his door while stating, "I know I'm suppose [sic] to read it to your dum [sic] ass but I'm not reading shit to you."

Even if the court were to assume the truth of the facts attested to in plaintiff's declaration and the Scott and Brown affidavits, plaintiff has not established that he is likely to succeed on the merits of his action. On this point, plaintiff merely conclusorily argues that he "has a great likelihood of success on the merits. What defendants and other prison officials at HDSP have done and condoned. And still continue to subject plaintiff to, 'continual retaliation of "all" forms.'" Plaintiff has not attempted to make any preliminary showing with regard to the elements of his claims or present any argument to persuade the Court that he is likely to establish those elements at summary judgment or trial. As plaintiff has failed to show that he is likely to succeed on the merits of his claims, he is not entitled to a TRO or preliminary injunction and the court need not consider whether he has made the requisite showings of irreparable harm, favorable balance of the equities, or public interest. Accordingly, the undersigned recommends denial of plaintiff's "Motion of Renewal of TRO/Preliminary Injunction," Dckt. No. 44. Plaintiff's "Motion Requesting the Court to Shorting [sic] Time on Setting Hearing for TRO/Preliminary Injunction Renewed," Dckt. No. 46, should be denied as moot.

**IV.     Defendants' Motions to Dismiss**

On August 10, 2009, defendants Betti, Brautingham, Cunningham, Hunter, and Callison moved to dismiss plaintiff's complaint, arguing that (1) plaintiff failed to exhaust his administrative remedies against defendant Betti, (2) plaintiff failed to amend his complaint to state a federal cause of action against Betti with regard to the events of September 15, 2007 after the initial claim was dismissed, (3) plaintiff failed to comply with California's government tort claims statutes by presenting his state law tort claims to the California Victim Compensation and

4

Government Claims Board ("the Board"), and (4) plaintiff's due process claim against defendant Callison is not legally viable. Dckt. No. 58. On October 23, 2009, defendant Lebeck moved to dismiss the claims against him for assault and battery and violation of the Eighth Amendment, arguing that plaintiff failed to exhaust his administrative remedies and failed to present the state law tort claims to the Board. Dckt. No. 72.

### A. Exhaustion of Federal Claims Against Defendants Betti and Lebeck

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney*, 311 F.3d 1198.

#### 1. **Standards Applicable to Motions to Dismiss for Failure to Exhaust**

The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003). Nor does § 1997e(a) require a plaintiff to plead exhaustion. *Id.* at 1119. Rather, "§ 1997e(a) creates a defense – defendants have the burden of raising and proving the absence of exhaustion." *Id.* The Ninth Circuit determined in *Wyatt* that because the defense of failure to exhaust "is not on the merits" and summary judgment "is on the merits," the defense should be treated as a matter

5

in abatement[2] to be resolved pursuant to a motion made under "unenumerated Rule 12(b)." *Id.* The court stated that "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20.

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the U.S. Supreme Court held that failure to exhaust under the PLRA is an affirmative defense. It clarified that if the affirmative defense can be decided on the pleadings alone, a motion under Rule 12(b)(6) is appropriate. *Id.* at 215. The Court analogized to a motion to dismiss based on a statute limitations defense and stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Id*.

////

---

[2] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). It has its roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c). Rule 7 "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1181, including pleas in abatement. *Black's Law Dictionary* 4 (6th ed. 1990). The "plea in abatement" is an archaic common law "plea which, without disputing merits of plaintiff's claim, objects to place, mode or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer an action on its merits, or deny existence of a particular cause of action on which plaintiff relies." *Black's Law Dictionary* 1151 (6th ed. 1990). The Advisory Committee Notes to Rule 7(c) state that all statutes using the word "plea" are "modified in form by this rule." Thus, for example, the Revision Notes to 28 U.S.C. § 2105 (West 2006), which prohibits reversal of a District Court's ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of Appeals states, "Rule7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor. The words 'matters in abatement' were, therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'" Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of a plea in abatement. *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of action," and "plea in abatement").

Thus, where the complaint itself demonstrate the absence of exhaustion, under *Jones* the issue may be resolved under Rule 12(b)(6). But, where an affirmative defense is raised that requires the presentation of evidence outside the pleadings (which includes the defense of failure to exhaust as required by 42 U.S.C. § 1997e(a)) the issue must be addressed under standards that utilized the procedural safeguards of Rule 56, so that disputed material factual issues and the credibility of conflicting witnesses are resolved through live testimony and not on paper.[3] Fed. R. Civ. P. 12(d) (where a party presents affidavits or other matters outside the pleadings in support of its motion, the court must treat the motion "as one for summary judgment under Rule 56"), 56(b); *Panero v. City of North Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005).[4] *Jones* made clear that, "beyond the departures specified by the PLRA itself," nothing in the PLRA suggests that usual procedural practices should not be followed and noted that departures from the usual procedural requirements are to be expressly made by Congress. *Jones*, 549 U.S. at 212, 214-16.

////

---

[3] As discussed above, the reasoning in *Wyatt* for adhering to Rule 12(b) appears to have been that frequently a motion for "summary judgment is on the merits," and a failure to exhaust is independent of the substantive claims before the court. *Wyatt*, 315 F.3d at 1119. But, a motion asserting an affirmative defense, even when it does not address the merits of the substantive claims, must be brought under Rule 56 if the motion relies upon matters extrinsic to the complaint to establish the factual predicate for the defense. Motions challenging exhaustion of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the complaint and Rule 56 provides the procedural tools for determining whether conflicting declarations require resolution through live testimony and credibility findings.

[4] Several other Circuits have applied summary judgment principles when the defense of failure to exhaust cannot be decided on the pleadings. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (addressing exhaustion at summary judgment); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (reversing grant of summary judgment on exhaustion and remanding for further proceedings); *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 379-80 (5th Cir. May 1, 2008) (addressing exhaustion at summary judgment); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (reviewing evidence elicited at trial as to whether prisoner exhausted available remedies); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (addressing exhaustion at summary judgment); *but see Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (finding that PLRA exhaustion should be treated as a matter in abatement and should be decided on a Rule 12(b) motion, even when factual disputes exist); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (rejecting the summary judgment and the Rule 12(b) approaches to PLRA exhaustion and instead determining that once a PLRA exhaustion defense is raised, a special evidentiary hearing should be held to address that defense before litigation on the merits proceeds).

Additionally, the Ninth Circuit recognized in *Wyatt* that, when the district court looks beyond the pleadings to a factual record, which commonly occurs in deciding an exhaustion motion, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt*, 315 F.3d at 1119, n.14.

Thus, whether a motion asserting an affirmative defense such as failure to exhaust may be raised under Rule 12 or Rule 56 is not determined by whether the defense asserted in the motion goes to the "merits" of the claim. Whether judgment is sought on the merits or whether the motion seeks to bar consideration of the merits based on a technical ground that precludes reaching the merits (i.e., exhaustion, claim or issue preclusion, a statute of limitations, etc.), the determining factor is whether the factual predicate for the motion is based on the text of the pleading or instead depends upon evidence submitted with the motion. *See Jones*, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

Here, defendant's motion necessarily requires the court to consider the declarations and exhibits presented for the purpose of proving the absence of exhaustion. Notwithstanding the analysis above, the court recognizes that under *Wyatt* the instant motion is to be presented as an "unenumerated" Rule 12(b) motion to dismiss. However, the court analyzes the motion, as *Wyatt* suggests, under a standard "closely analogous to summary judgment." 315 F.3d at 119, n.15. If, under that standard, the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.* at 1119-20.

### 2. Summary Judgment Standards

Under Rule 56, resolution of the exhaustion issue in favor of defendants is appropriate when it is demonstrated that there is "no genuine issue as to any material fact" over the question. Fed. R. Civ. P. 56(c). The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there

is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995).

For the opposing party to establish a genuine issue of fact the factual dispute must meet two requirements. First, the dispute must be over a fact(s) that is material, i.e. one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, which here involves the question of whether plaintiff has met the exhaustion requirement. *Id.* ("As to materiality, the substantive law will identify which facts are material.").

Second, the dispute must be genuine. In this regard, the court must focus on which party bears the burden of proof on the factual dispute in question. Where the opposing party bears the burden of proof on the issue in dispute, conclusory allegations, unsupported by factual material, are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the record relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in that party's favor, there is no genuine issue. *Id.*; *Celotex*, 477 U.S. at 323.

1    Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that
affects the outcome of the case.

On April 14, 2009, the Court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### 3. Exhaustion Under California Law

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) ("Form 602"), that is made "readily available to all inmates." Cal. Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. *Id*., § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain

10

circumstances. *Id.*, § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.

If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id.*, §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id.*, § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id.*, § 3084.3(c)(6). *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. The claim must be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.

**4. <u>Analysis</u>**

Defendants' notice of motion for Docket No. 58 states, "[t]his motion is made on the basis that Plaintiff failed to exhaust administrative remedies before bringing a federal claim against Defendant Betti." However, the points and authorities submitted in support of the motion contain no argument (or even reference to) this claim. Plaintiff has submitted documents showing the processing of an administrative appeal about defendant Betti's alleged misconduct

on September 13, 2007 through all three levels of review.[5] It is defendant, not plaintiff, who bears the burden of proof on this affirmative defense. Thus, defendant must present evidence adequate to carry that burden on this motion. As defendant has not shown the absence of a genuine and material dispute about plaintiff's exhaustion of his federal claim against defendant Betti, that claim cannot be dismissed for failure to exhaust.

In Docket No. 74, defendant Lebeck contends that the federal claim asserted against him has not been exhausted. That claim alleges that on November 6, 2007, while plaintiff was getting into a van for transport to the Correctional Treatment Center ("CTC"), defendant Lebeck pushed plaintiff into the van by grabbing his right arm, which Lebeck knew was injured, causing pain to plaintiff's left side and shoulder. Compl., ¶¶ 83-84. Lebeck then grabbed plaintiff's legs "raising them high in the air [and] turning plaintiff on his back causing severer [sic] pain to shoot through plaintiff's back" and threw plaintiff's legs into the van. *Id.*, ¶ 84. Plaintiff feared for his life. *Id.* One week earlier, on October 31, 2007, Lebeck approached plaintiff's cell and said, "'Dam' [sic] Jones we haven't 'kill'ed you yet, your [sic] not 'dead' yet." *Id.*, ¶ 85. Plaintiff contends that these actions deprived him of his right to be free of cruel and unusual punishment under the Eighth Amendment. *Id.*, ¶ 88.

Defendant Lebeck submits the declaration of N. Grannis, Chief of the Inmate Appeals Branch ("IAB"), aka the Director's Level of appeal. Grannis declares that IAB records do not show that plaintiff filed an appeal with the Director's level alleging an unlawful use of force on November 6, 2007. Grannis Decl., ¶¶ 9-10. Plaintiff responds that he tried to exhaust his administrative appeals with regard to the incident, submitting a Form 602 on November 13, 2007. According to plaintiff, "this 602 was never responded to, given a log # nor sent back to

---

[5] Plaintiff has submitted copies of letters from prison officials partially granting and partially denying the appeal at the first and second levels as well as a copy of the Form 602, which indicates at the bottom of the second page that the appeal was also processed through and denied at the Director's level, although plaintiff has not submitted a copy of the letter from the Director's level explaining the reasons for the denial.

12

plaintiff." Pl.'s Opp'n to Def. Lebeck's Mot. to Dism. at 1. Plaintiff has attached to his opposition brief a copy of a Form 602 alleging that defendant Lebeck assaulted plaintiff on November 6, 2007 in the manner described in the complaint. *Id.*, Ex. A at 3. The form is dated "11-13-07" by plaintiff and stamped as received by IAB on May 14, 2009. *Id.* It bears no stamps or other markings indicating receipt by the other levels of review. *Id.* Preceding the 602 is a letter from plaintiff to Grannis, dated May 9, 2009, in which plaintiff states that he has submitted the Form 602 twice, but it was never responded to. *Id.*, Ex. A at 2. Because the appeal had not been responded to, plaintiff submitted it directly to IAB, requesting that "you assist me and sent it to HDSP appeals coordinators and have them file, process, and give [the] 602 a log #." *Id.* Grannis responded on June 4, 2009, rejecting plaintiff's appeal for not having first been accepted and completed through the second level of review. *Id.*, Ex. A at 1. Grannis did not respond to plaintiff's allegations that officials were not processing the Form 602 at the lower levels.

The U.S. Supreme Court and the Ninth Circuit Court of Appeals have not decided whether the PLRA's exhaustion requirement is subject to exceptions. *Woodford v. Ngo*, __ U.S. __, 126 S. Ct. 2378, 2393 (2006) (Breyer, J., concurring) (assuming exceptions apply); *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) ("It is unclear whether we can read exceptions into the PLRA's exhaustion requirement."). Many other circuits have concluded that an exception exists, or exhaustion has been completed, where the petitioner could not properly exhaust due to the misconduct or inaction of prison officials. *See*, *e.g.*, *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was preventing from availing himself of it."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that courts must "ensure any defects in exhaustion were not procured from the action or inaction of prison officials"); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (holding an administrative remedy unavailable under the PLRA where prison staff fail to respond to a properly-filed grievance or

commit misconduct that prevents exhaustion); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (administrative remedies not available under the PLRA where the petitioner could not use the administrative appeals process due to prison officials' conduct or failure to timely process the appeal); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (administrative remedy is unavailable where prison officials fail to timely respond to the inmate's grievance); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (same); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding that the district court did not err by declining to dismiss claim for failure to exhaust where prison did not respond to the petitioner's grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (holding that exhaustion occurs when inmate files valid grievance and prison officials' time to respond has expired).

Defendant Lebeck has not submitted a reply brief responding to plaintiff's claim that he was prevented from processing his appeal through the administrative process due to the inaction or misconduct of prison officials. As plaintiff has demonstrated a genuine disputed fact regarding whether he exhausted his claim regarding defendant Lebeck's alleged conduct on November 6, 2007 (or whether he should be excused from the exhaustion requirement), defendant Lebeck has not met his burden of establishing an absence of disputed fact on this issue and his motion to dismiss plaintiff's federal claim against him must be denied.

**B. Federal Cause of Action Against Defendant Betti Regarding Events of September 15, 2007**

Defendant Betti moves to dismiss plaintiff's federal cause of action against him regarding the events of September 15, 2007, in which plaintiff claims that defendant Betti threw plaintiff's food tray through the food port on that date, causing food items to fall on the ground. Compl., ¶ 35. In an order dated September 4, 2008, this court found that plaintiff had not stated a claim for relief by his allegation that "L. Betti threw plaintiff's food tray through the food port on

September 15, 2007." The court further ruled, "[i]f plaintiff elects to attempt to amend his complaint to cure his defective claims against defendant[] . . . Betti . . ., he has 30 days so to do." Plaintiff did not amend his complaint within the time provided by the court. Nor does plaintiff submit any opposition to defendant Betti's motion to dismiss this claim stating that there exist facts not alleged in the original complaint which would state a claim against defendant Betti for the events of September 15, 2007, and the claim should therefore be dismissed without leave to amend. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. Cal. 2000) ("A district court acts within its discretion to deny leave to amend when amendment would be futile[.]").

### C. State Law Tort Claims

Defendants Betti, Braughtingham, Cunningham, Hunter, Callison, and Lebeck move to dismiss plaintiff's state-law tort claims against them (for assault and battery, *see* Compl., ¶ 89) on the grounds that plaintiff has not followed the procedure mandated by the California Tort Claims Act ("the Act") with regard to those claims. The Act requires that a plaintiff who seeks to prosecute a claim for damages against a state employee first present that claim to the Board within six months of the accrual of the claim, to obtain leave to file a late claim, or to obtain judicial relief from the claim-presentation requirement. Cal. Gov't Code §§ 900.2, 905, 905.2, 910, 911.2, 911.4, 911.6, 945.4, 950-950.2; *California v. Super. Ct. (Bodde)*, 32 Cal.4th 1234, 1245 (2004). To state a tort claim against a state employee, the plaintiff must allege compliance with the presentation requirement. *Bodde*, 32 Cal.4th at 1245; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so here. In addition, defendants have submitted declarations of James Reinmiller, the custodian of records at the Board, who avers that his diligent search of the Board's records has not revealed any claims presented to the Board by plaintiff "for any events in the month of November 2007 involving the use of force, particularly the use of force on November 6, 2007" (the time period in which defendants Brautingham, Betti, Cunningham, and Hunter allegedly assaulted plaintiff) or "for any events in the month of September 2007 involving the use of force, particularly the use of force on

September 13, 2007 and September 15, 2007" (the time period in which defendant Lebeck allegedly assaulted plaintiff).[6] Defs.' Betti, Brautingham, Cunningham, Hunter, & Callison Mot. to Dism., Decl. of James Reinmiller, ¶¶ 4-7; Def. Lebeck Mot. to Dism., Decl. of James Reinmiller, ¶¶ 5-8. Accordingly, defendants ask that their motion to dismiss the state-law claims be granted without leave to amend.

Plaintiff argues that his state-law claims are proper because the Court has supplemental jurisdiction over them under 28 U.S.C. § 1367. However, jurisdiction presents an issue separate from whether plaintiff ever presented a claim, and supplemental jurisdiction does not confer on the Court the power to adjudicate a claim which plaintiff is barred from litigating due to his failure to present it to the Board. *See Karim-Panahi*, 839 F.2d at 627 (affirming dismissal of supplemental state tort claims where plaintiff failed to allege compliance with California's tort claim procedures). As plaintiff has not alleged compliance with California's tort claim presentation rules, defendants' motion to dismiss his state-law claims must be granted. Moreover, defendants' submissions establish, and plaintiff does not dispute, that plaintiff cannot allege compliance with California's presentation rules at this time, as over two years have elapsed since the accrual of plaintiff's claims and thus any presentation would be untimely. *See* Cal. Gov't Code §§ 911.2 (providing six months for presentation from accrual of the cause of action), 911.4(b) (providing up to one year from accrual of the cause of action to seek leave to file a late claim), 946.6(b) (providing six months from denial of leave to file a late claim to seek judicial relief from presentation requirements).

////

---

[6] Defendants seek judicial notice of the records of the Board under Federal Rule of Evidence 201. As plaintiff does not oppose judicial notice and the records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," the Court may grant defendants' requests for judicial notice (Docket No. 62 (ISO Mot. to Dism. filed by Defs. Betti, Brautingham, Cunningham, Hunter, & Callison) & unnumbered Request for Judicial Notice (ISO Mot. to Dism. filed by Def. Lebeck)). *See* Fed. R. Evid. 201(b).

1    Accordingly, the undersigned recommends dismissal of the state-law claims (paragraph

2 89 of the Complaint) without leave to amend. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th

3 Cir. 1995) (per curiam) (noting that leave to amend is proper unless "it is absolutely clear that no

4 amendment can cure the defect").

**D. Due Process Claim**

Defendant Callison seeks dismissal of plaintiff's due process claim against him.
According to defendant Callison, the conduct alleged by plaintiff to have violated his due
process rights is encompassed within the more specific guarantees of the Eighth Amendment
regarding cruel and unusual punishment and must therefore be analyzed under that amendment
rather than the more generalized due process guarantee. Plaintiff's due process claim against
Callison is as follows:

> The Actions of Defendant Callison physically pushing Nurse Day out [of] pod when she attempted to come give plaintiff his medication as stated in paragraph 74 constituted deliberate indifference to serious mental health needs in violation [of the] 8th and 14th Amendments Cruel and Unusual Punishment and Due Process Equal Protection.

Compl., ¶ 96. Plaintiff argues that this claim alleges an equal protection violation and is proper because he alleges that he did not receive his medication due to discrimination on the bases of race and mental illness. The Court notes that the constitutional guarantees of equal protection and of due process are distinct, and that defendant Callison's motion does not seek dismissal of plaintiff's equal protection claim.

"[W]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims'." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996). To the extent that plaintiff alleges that defendant Callison pushed Nurse Day when she was trying to give plaintiff his medication, in deliberate indifference to his serious mental health

17

needs and due to impermissible discriminatory animus, that behavior is protected against by explicit protections of the Eighth and Fourteenth Amendments. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("[T]he unnecessary and wanton infliction of pain . . . constitute[s] cruel and unusual punishment forbidden by the Eighth Amendment."); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." (citations and quotation marks omitted)). Accordingly, the claim must be analyzed under those provisions, rather than "the more generalized notion of 'substantive due process.'" *See Patel*, 103 F.3d at 874. The undersigned therefore recommends granting defendant Callison's motion to dismiss the due process claim, but not the Eighth Amendment cruel and unusual punishment claim or the Fourteenth Amendment equal protection claim, alleged in paragraph 96 of the complaint. In concluding that the Equal Protection and Cruel and Unusual Punishment claims may not be dismissed on this Rule 12(b)(6) motion the court is cognizant of the lenity accorded *pro se* pleadings in the Ninth Circuit. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). Whether the Equal Protection and Cruel and Unusual Punishment claims can be supported by evidence adequate to overcome summary judgment or prevail at trial remains to be seen. But the text of the complaint, liberally construed, states claims for alleged violations of federally protected rights as to Equal Protection and Cruel and Unusual Punishment.

As these facts do not give rise to a claim analyzable under substantive due process principles, leave to amend to state a substantive due process claim would be futile and should therefore not be granted. *See Chappel*, 232 F.3d at 726.

////

////

**V.     Recommendations and Order**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's June 3, 2009 motion to file an amended complaint, Dckt. No. 45, is granted;

2. Plaintiff has 30 days from the date this order is served to file and serve the amended complaint; and

3. Defendants have from 30 days of the service of the amended complaint to file a response.

Further, it is hereby RECOMMENDED that:

1. Plaintiff's variously-styled motions seeking injunctive relief, Dckt. Nos. 5, 6, 10, 35, 44, 46, 64, 71, and 73, be denied;

2. The August 10, 2009 motion to dismiss filed by defendants Betti, Brautingham, Cunningham, Hunter, and Callison, Dckt. No. 58, be granted in part and denied in part, with the following claims being dismissed without leave to amend:

    a. plaintiff's claim against defendant Betti concerning the events of September 15, 2007;

    b. plaintiff's state-law assault and battery claims against defendants Betti, Brautingham, Cunningham, and Hunter; and

    c. plaintiff's due process claim against defendant Callison;

2. The October 23, 2009 motion to dismiss filed by defendant Lebeck, Dckt. No. 72, be granted in part and denied in part, and plaintiff's state-law assault and battery claims against defendant Lebeck be dismissed without leave to amend;

3. The August 10, 2009 Request for Judicial Notice filed by defendants Betti, Brautingham, Hunter, Callison, and Cunningham, Dckt. No. 62, be granted; and

4. The October 23, 2009 Request for Judicial Notice filed by defendant Lebeck be granted.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 12, 2010.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE